UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 9, 2017

Billy Ray Jackson
7996 Silent Winds Court Apt. H
Glen Burnie, MD 21061

Kathleen C. Buckner, Esq.
Social Security Administration
Altmeyer Building
6401 Security Boulevard, Room 617
Baltimore, Maryland 21235

RE: *Billy Ray Jackson v. Commissioner, Social Security Administration*;
Civil No. SAG-16-3956

Dear Mr. Jackson and Counsel:

On December 12, 2016, Plaintiff Billy Ray Jackson, who proceeds *pro se*, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits. (ECF No. 1). I have considered Mr. Jackson's Motion for Summary Judgment, the Commissioner's Motion for Summary Judgment, and Mr. Jackson's "Motion in Opposition to Defendant's Motion to Dismiss and Move to Judgement [*sic*]." (ECF Nos. 15, 17, 19). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion, deny Mr. Jackson's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Mr. Jackson filed his claim for Disability Insurance Benefits ("DIB") on November 20, 2012, alleging that he became disabled on January 29, 2003. (Tr. 212-13). After reviewing Mr. Jackson's employment history, including the number of quarters he had been employed, the Social Security Administration determined that Mr. Jackson's "date last insured" for the purposes of DIB was September 30, 2008. (Tr. 214). Accordingly, in order to be eligible to receive DIB, Mr. Jackson had to establish that he became disabled between January 29, 2003 and September 30, 2008. Put another way, if Mr. Jackson became disabled after September 30, 2008, but was not disabled before that date, he would not be entitled to receive DIB.

Mr. Jackson's claim was denied initially and on reconsideration. (Tr. 145-48, 150-51). Hearings were held on March 10, 2015 and October 23, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 26-75). Following the hearings, the ALJ determined that Mr. Jackson was not disabled within the meaning of the Social Security Act during the time frame between January 29, 2003 and September 30, 2008. (Tr. 11-25). The Appeals Council considered additional materials submitted by Mr. Jackson, but ultimately denied Mr. Jackson's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that, between January 29, 2003 and September 30, 2008, Mr. Jackson suffered from the medically determinable impairments of lumbar and cervical radiculopathy. (Tr. 16). However, the ALJ determined that Mr. Jackson had not established that those impairments were severe during the pertinent time frame. (Tr. 17).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). Ultimately, I am not permitted to make my own determination about whether or not Mr. Jackson was disabled. My review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Mr. Jackson's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, because the ALJ supported her RFC determination with substantial evidence, I must affirm.

The ALJ applied the law in performing the sequential evaluation, and in ending her assessment at step two. Initially, the ALJ ruled in Mr. Jackson's favor at step one and determined that he did not engage in substantial gainful activity after his alleged onset date. (Tr. 16); *see* 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considered the severity of the impairments that Mr. Jackson claimed prevented him from working. *See* 20 C.F.R. § 404.1520(a)(4)(ii). *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230 (4th Cir. 2011) ("Step two of the sequential evaluation is a threshold question with a *de minimis* severity requirement."). The difficulty, in this case, is that Mr. Jackson produced absolutely no medical records from the period between January 29, 2003 and September 30, 2008. Although he explained that his primary physician had passed away in 2006, and his records were unavailable by the time that he filed his claim in 2012, Mr. Jackson had the legal burden to put forth medical evidence to establish that he had a severe impairment that affected his ability to perform work functions. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that the claimant bears the burden of proof during the first four steps of the sequential evaluation). He was unable to meet that burden.

Moreover, as the ALJ describes, the medical records post-dating the relevant period do not suggest that Mr. Jackson's back impairment was disabling on or before 2008. In the earliest record on file, from November 24, 2008, Mr. Jackson sought treatment for an upper respiratory infection and told his new doctor, Dr. McLoughlin, that he was "usually healthy" and "[h]ad full physical earlier this year at Walter Reed." (Tr. 320). About one year later, at his next appointment on November 27, 2009, Dr. McLoughlin noted that Mr. Jackson "presents for a pre-employment exam," "is going to work in law enforcement," and "has generally been very healthy." (Tr. 322). The musculoskeletal examination at that appointment was normal. (Tr. 322-23). The first mention of back pain did not come until March 22, 2010, when Dr. McLoughlin wrote, "Pt also has back Pain, but it is 1st thing in the morning and gets better with a shower and exercise, so he's going to look into a new mattress." (Tr. 326). Although Mr. Jackson now contends that some of Dr. McLoughlin's notes were in error, the ALJ made an assessment about Mr. Jackson's credibility as compared to the medical records, (Tr. 18), and this Court is not permitted to reweigh that evidence. The "addendum" containing corrections to those earlier records, written by a new medical provider in 2014, is premised entirely on information provided by Mr. Jackson in 2014, and is therefore subject to the same credibility assessment. (Tr. 430).

Without question, Mr. Jackson's medical records show a significant worsening of his back pain in the 2010/2011/2012 time frame, culminating in his back surgery in 2015. *See* (Tr. 329) (6/26/2012 record reflecting "more intense pain x last 2-3 years"); (Tr. 352) (8/27/2012 note reflecting "approximately 7 months ago, he was still jogging, however, since the pain has worsened, he has had to discontinue"). As noted above, however, unless Mr. Jackson's records established severe impairments on or before September 30, 2008, his later condition is not relevant to the determination the ALJ had to make. The ALJ cited to substantial evidence in the existing medical records, and the lack of other medical records, to suggest that, prior to September 30, 2008, Mr. Jackson's ability to perform substantial gainful employment was not affected by his impairment.

The only medical opinions in the record are those of the non-examining State agency medical consultants and the consultative examiner, Dr. Sukhpal Jassi. The ALJ assigned "great weight" to the opinion of the State agency medical consultants, who reviewed the medical records and found insufficient evidence to determine that Mr. Jackson had a severe impairment. (Tr. 18-19). The ALJ also assigned "partial weight" to the medical interrogatories submitted by non-examining physician Dr. Edwin Cruz, and "little weight" to the evaluation conducted by Dr. Jassi in 2015. (Tr. 19). Thus, the opinions from those two physicians did not play important roles in the ALJ's decision.

Mr. Jackson makes a number of arguments in support of his appeal. First, he submitted a large number of paper exhibits. The paper exhibits do not contain any new medical records, but simply consist of (1) copies of records already in the official transcript of this case; and (2) documentation relating to Mr. Jackson's claims before the Merit Protection Board and related court proceedings, and a lawsuit filed against the ALJ in this case along with other defendants. My role is limited to a review of the official transcript of the proceeding, unless other new and material medical evidence is submitted before this Court. *See Huckabee v. Richardson,* 468 F.2d

1380, 1381 (4th Cir. 1972). The records relating to other administrative and court proceedings are not relevant to my evaluation of the sufficiency of the evidence to support the ALJ's opinion.[1]

Second, Mr. Jackson suggests that the record is not clear regarding what documentation was considered by the ALJ. In fact, however, the transcript contains all of the records that were submitted, including the evidence Mr. Jackson submitted to the Appeals Council and the other evidence he submitted at the hearing stage. (Tr. 104-131). As the Appeals Council noted in its denial, the treatment records submitted were all about a later time, since the ALJ's decision was only through September 30, 2008. (Tr. 2). Mr. Jackson acknowledges that there are no available medical records from the period before September 30, 2008. Pl. Mot. at 7, 10-11.

Mr. Jackson also contests the testimony of the Vocational Expert at the hearing. Pl. Mot. at 8. However, because the ALJ resolved the case with a finding at step two, the ALJ did not consider or rely upon the testimony of the Vocational Expert.

Ultimately, the ALJ's finding was supported by substantial evidence, including the lack of medical records for the relevant time period and the content of the records from the 2008-2010 time frame. The situation is unfortunate because it appears that Mr. Jackson's desire to try to return to work caused his delay in applying for disability benefits, which resulted in the unavailability of medical records that may have supported his claim. However, based upon the record presented, this Court is bound to affirm the ALJ's determination.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED. The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

---

[1] Additionally, Mr. Jackson suggests that the audio CDs provided to him do not contain a recording of his hearings. Pl. Mot. at 4. Audio recordings are only provided upon request, but the full transcripts of the hearings are contained in the case record. (Tr. 26-75). Mr. Jackson also alleges that he was unable to find representation, despite having been provided a list of organizations that undertake representation of claimants. (Pl. Mot. at 5); (Tr. 158-60). However, SSA does not have to find representation for a claimant. *Lamay v. Astrue,* 562 F.3d 503, 509 (2nd Cir. 2009). Also, a claimant is not required to have counsel at a Social Security proceeding. In fact, "lack of representation by counsel is not by itself an indication that a hearing was not full and fair." *Sims v. Harris*, 631 F.2d 26, 27-28 (4th Cir. 1980); *see also Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (stating "the Secretary has no duty to insist that claimant have counsel"). Instead, remanding a case for lack of counsel is warranted only "where the absence of counsel created clear prejudice or unfairness to the claimant." *Sims*, 631 F.2d at 28; *see also Berry v. Astrue*, No. 1:08-cv-5, 2009 WL 50072, at *13 (W.D. Va. Jan. 7, 2009). Here, there is no indication that Mr. Jackson would have fared any better with counsel. The primary impediment to his claim is the lack of medical documentation during the relevant time period, and no attorney would have been able to obtain the records under the circumstances.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge